UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Angelique Kaczmarek** | ) | **CASE NO. 1:13 CV 1959** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Res-Care, Inc.** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon Plaintiff Angelique Kaczmarek's Motion to Compel & Motion to Extend Discovery Deadline (Doc. 21). This case arises out of plaintiff's former employment with defendant. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

### Facts

Plaintiff, Angelique Kaczmarek, brings this action against defendant, Res-Care Inc., her former employer, for retaliatory discharge and sexual harassment. Defendant provides residential and support services for seniors and people with disabilities. Plaintiff was employed by defendant as an Executive Director in its Chesterland, Ohio office.

1

Plaintiff alleges that she was terminated shortly after she reported sexual harassment by another of defendant's employees, Arthur Finch ("Finch"), at a March 2013 conference in Texas. Finch was a Regional Human Resources Director for defendant and worked out of its offices in Georgia and Kentucky. As Human Resources Director, Finch provided HR support services for and supervised local HR managers and Executive Directors for 64 of defendant's facilities in 26 states. Finch supervised plaintiff's HR-related work in Ohio through email and telephone. Plaintiff reported the sexual harassment to her supervisor, Tonya Mangerie ("Mangerie"), the next day at the conference. Mangerie told Finch of plaintiff's complaint. Shortly after plaintiff had reported his conduct, Finch approached plaintiff and began questioning her about the complaint in front of her colleagues.[1]

Defendant suspended plaintiff's employment on April 8, 2013, less than one month after she reported Finch's actions. Plaintiff was terminated one week later. Defendant alleges that plaintiff was terminated for not properly implementing its Safe Water Temperature Policy ("Safe Water Policy"), which works to ensure safe water temperatures at sites defendant owned, leased, or managed. (Doc. 22-6). This led to a 71-year old individual with developmental disabilities, JM, being scalded in his bathtub. Plaintiff maintains that the Safe Water Policy never applied to "supported living" clients cared for in their own homes like JM. Plaintiff contends that defendant's offered grounds for her termination—that she failed to properly train defendant's employees on the Safe Water Policy—are pretextual.

This matter is before the Court upon plaintiff's motion to compel the production of documents she sought in discovery and to extend the discovery deadline. Defendant opposes

---

[1] This Court previously dismissed Finch as a defendant because of a lack of personal jurisdiction over him. (Doc. 13).

2

the motion.

### Discussion

### I. Motion to Compel

Plaintiff seeks to compel discovery of the following items.[2]

**A. Reports of Critical Incidents from the Critical Incident Database; Corresponding Disciplinary Records and Emails Concerning Critical Incidents and Any Discipline Related Thereto**

Plaintiff initially requested all critical incident reports ("CIR") and disciplinary investigations/corrective actions from January 1, 2012 to December 31, 2013. Defendant responded that these requests are overbroad as there were over 15,000 CIRs during this time period. In her motion, plaintiff asks for a listing of all incidents for this two-year period where discipline or corrective action was taken. Plaintiff maintains that without knowledge of other incidents of alleged violations of any policy that led to a client's injury, she cannot limit her request to specific CIRs. Defendant states that it cannot search the CIRs to see if they resulted in discipline. Plaintiff was not terminated as the result of a CIR, but rather the CIR was the means through which defendant learned that plaintiff was not implementing the Safe Water Policy. Moreover, defendant objects that the request seeks records beyond plaintiff's decisional unit and requests information that is not comparable to the scalding incident with JM.

---

[2] The Court rejects defendant's argument that it should not consider plaintiff's motion to compel for failure to follow the procedures outlined in Local Rule 37.1. Plaintiff apprised the Court and opposing counsel that there was disagreement about document production in advance of submitting the instant motion.

Upon review, the Court agrees that plaintiff's request is overly broad. However, the Court finds that the documents could be relevant to plaintiff's claim and directs plaintiff to submit a narrower request.

Plaintiff has also asked for the "disciplinary investigations and records for all other managerial persons and/or Executive Directors who have been disciplined for violating any company policy." (Doc. 21 p. 11). Defendant responds that plaintiff's request is overly broad and unduly burdensome as it would have to search all of its managers' files. This request calls for records of any and all violations of defendant's policies, no matter how trivial or different from plaintiff's conduct. Given the heightened privacy interests at issue in these personnel files, defendant asserts that this request exceeds the scope of discovery. Upon review, the Court agrees that plaintiff's request is too broad. Plaintiff is directed to narrow her request.

Plaintiff requests documentation related to several other critical incidents, including a client dying after chocking on food that was provided in a manner that violated policy, physically losing track of a client, failure to respond to a sexual harassment claim, and leaving a client unattended in a theater. (Doc. 21 p. 12). Defendant responds that these examples are "pure speculation" and are unrelated and dissimilar to the circumstances that lead to plaintiff's termination. Upon review, the Court grants plaintiff's motion to compel the production of documents related to the incidents identified by plaintiff.

Plaintiff acknowledges that defendant provided her with emails related to other critical incidents. However, plaintiff asserts that the emails were redacted so that only the to/from information and the date and time were provided. The body of the emails was redacted in its

4

entirety so plaintiff was unable to ascertain the nature of the incident or if any discipline occurred. (Doc. 23-13).  Plaintiff avers that this was entirely unnecessary given that the parties had entered into a protective order.  Defendant did not offer any explanation.  The Court orders defendant to produce the unredacted emails to plaintiff.

**B. Water logs (initial and daily) for any supported living/non-group homes; Safety Committee meeting minutes/agendas; Client Admission Files**

Plaintiff seeks to compel defendant to produce all water logs generated pursuant to defendant's Safe Water Policy.  Plaintiff contends that while defendant has produced water logs, they are primarily for the time period of September 2013 to December 2013, and none are for "supported living" clients in their own home.  Defendant responds that it has already produced all of the water logs for 2011 to 2013. (Doc. 22 p. 5 n. 1).  Based upon this representation, the Court will not compel any further response.

Plaintiff seeks safety committee meeting minutes and agendas because defendant is asserting that plaintiff never reviewed any water logs which led to her failure to implement the Safe Water Policy for which she was terminated.  Plaintiff contends that the water logs would have been reviewed as part of the safety committee meeting minutes and she therefore seeks these documents to refute defendant's claim.  Defendant contends that plaintiff did not request these documents.  Upon review, the Court grants plaintiff's motion to compel the production of these documents.

Plaintiff requests production of client admission files.  Defendant responds that plaintiff's request is too broad, burdensome, and contains information protected by HIPPA.  In reply, plaintiff offered to limit her request to client admission files of "any supported living

5

client in their own home to which the hot water policy applied from January 1, 2011-April 15, 2013." (Doc. 23 p. 19). Plaintiff argues that this request is not overly broad as only a few offices handle supported living clients. Upon review, plaintiff's motion is granted. Defendant is ordered to produce client admission files for supported living clients in accordance with plaintiff's narrower request in her reply brief.

### C. Manager meeting minutes/agendas and Documentation of Training Provided

Plaintiff moves to compel the production of documents related to the manager's meetings. Plaintiff contends that the training she provided to staff would be represented in the agenda and minutes from these meetings, and that this goes directly to defendant's claim that plaintiff failed to implement the Safe Water Policy. Records of these meetings were maintained by Nancy Wilson in a database and by Terry Rose in a spreadsheet. Additionally, agendas attached to sign-in sheets were maintained by plaintiff in binders in her office. Defendant responds that plaintiff did not request these documents. Upon review, the Court disagrees and grants plaintiff's motion.

### D. Documents relating to any investigation pertaining to the suspension/termination of Plaintiff and the Final Report Regarding Same

Plaintiff requests that the Court compel the production of the "final report" from the investigation surrounding plaintiff's termination, which plaintiff contends should have been created in accordance with defendant's policies. (Doc. 21 p. 17-18; Doc. 23 p. 11). Defendant responds that it does not know what plaintiff means by "final report," but it has already produced all responsive documents to this request. Therefore, the Court will not compel any further response.

6

**E. The Final Report Concerning the Sexual Harassment Investigation**

Similarly, plaintiff requests the Court compel the production of the "final report" from the investigation surrounding plaintiff's harassment claim against Finch. (Doc. 21 p. 17-18; Doc. 23 p. 11).  Defendant again responds that it does not know what plaintiff means by "final report," but it has already produced all responsive documents to these requests. Consequently, the Court will not compel any further response.[3]

**F. Emails between Finch/Mangerie; Cell Phone records relating to Finch and Mangerie**

Plaintiff has requested any correspondence between Mangerie and Finch from 2010 to the present.  Defendant responds that these documents were produced on June 10, 2014. Plaintiff argues that this late response is still incomplete because the correspondence that defendant did provide indicates that there should be other communications between Finch and Mangerie that have not been provided.  For example, an email from Mangerie to Finch on April 8, 2013 has Mangerie telling Finch "I just put her [plaintiff] on leave and need to bring you up to speed." (Doc. 23-1).  Plaintiff argues that one would expect there to be a record of some communication after this email.  However, defendant only produced phone records from after April 15, 2013—the day plaintiff was terminated—and contends that no other emails exist.[4]  Similarly, there is an April 8, 2013 email from David Folkner to Mangerie concerning

---

[3] Plaintiff also requested that the Court compel the production of information regarding Finch's termination.  However, defendant produced Finch's resignation letter following the motion to compel and plaintiff withdrew her request for this documentation.

[4] Plaintiff did not originally move to compel the production of phone records as defendant had indicated it would produce records for March and April 2013. Subsequently, defendant only produced records from April 15, 2013 onward.

7

plaintiff's employment agreement.  According to the email, it was forwarded to Mr. Folkner by Finch.  Finch's original email was not provided to plaintiff.

Upon review, defendant is ordered to search again for any other emails.[5]  If any are found, they are to be turned over immediately to plaintiff.  Additionally, defendant is ordered to search again for any phone records from before April 15, 2013 that meet defense counsel's original promise to turn over phone records from March and April 2013. (Doc. 23-2).

**G. Personnel files for: Jay Naeem; Tonya Mangerie; Gloria Llewelyn; Shelly Duplin; Wesley Sears; Coy Lightfoot; Dave Falkner; and Craig White**

Plaintiff requests that she be provided with the personnel files of some her supervisors and other individuals responsible for training or implementing the Safe Water Policy.  Jay Naeem was plaintiff's former direct supervisor.   Mangerie was plaintiff's supervisor at the time she was terminated.  Dave Folkner was one of plaintiff's supervisors.  Craig White was Finch and plaintiff's superior.  Gloria Llewelyn, Shelly Duplin and Wesley Sears were Executive Directors.  Coy Lightfoot was defendant's director of purchasing and, according to plaintiff, responsible for training, supervising or implementing the Safe Water Policy.  Plaintiff maintains that these personnel files will demonstrate the training that these individuals received which is not consistent with the training plaintiff received on the Safe Water Policy.  Moreover, they will demonstrate that she was the only one disciplined for not properly implementing the Safe Water Policy.  Defendant objects that plaintiff is seeking broad indiscriminate discovery.  The Court disagrees.  The personnel files plaintiff is seeking

---

[5] Plaintiff in her reply brief requests records from March and April 2013.

The Court declines to order the forensic search of defendant's computers requested by plaintiff.

relate to her claims. Consequently, the Court grants plaintiff's motion to compel.

### H. Plaintiff's Entire Personnel File

Plaintiff maintains that defendant has not produced all of her personnel file. Defendant has represented to the Court that plaintiff took her personnel file when she was terminated and, therefore, the documents cannot be produced. However, after the discovery deadline had passed, defendant produced an email dated March 20, 2012 from Cherie Ihnen to plaintiff and Finch in which she instructs plaintiff to send her personnel file to Finch as her "NEW Regional HR Director." (Doc. 23-6). The Court orders defendant to produce the personnel file in its entirety.

### I. Prior Versions of the Safe Water Policy and Attachments to the Email Dated September 19, 2012 between Jay Naeem and Plaintiff

Plaintiff requests that this Court compel the production of any prior or later versions of the Safe Water Policy. Defendant states that it has produced the Safe Water Policy issued in 2011, and that this is the only version of the policy. Given defendant's representation on this matter, plaintiff's motion to compel is denied.

Plaintiff requests that defendant provide the attachment to an email Jay Naeem sent to plaintiff. Defendant responds that it has already provided this attachment. (Doc. 22 p. 6). Plaintiff requests that defendant provide the Bates number of this attachment, because she maintains that the attachment has not been produced. Upon review, the Court directs defendant to provide plaintiff with the Bates number of this attachment.

### J. Defendant's Complete File Concerning JM

Plaintiff seeks defendant's complete records concerning JM. Specifically, plaintiff

9

contends that there should be an intake sheet, notes from caregivers, billing sheets, and other documentation. Plaintiff argues that these documents would show that JM was not subject to the hot water policy and that no shower/bathing services were being provided to him by defendant. Defendant responds that it provided plaintiff with JM's Individual Service Plan along with reports regarding his scalding accident. Upon review, the Court grants plaintiff's motion to compel the production of JM's file in its entierty.

**II. Motion to Reopen Discovery**

Finally, plaintiff moves to reopen the discovery period. Defendant has contended that Finch, defendant's then Human Resources Director, did not have any supervisory authority over plaintiff. (Doc. 5-2). Defendant maintains that Finch did not participate in the decision to terminate plaintiff's employment. (Doc. 5-2). Additionally, defendant has stated that Finch was terminated from his employment. (Doc. 5-1 p. 2). After the close of the discovery deadline, the following documents were turned over to plaintiff:

- An email directing plaintiff to send her personnel file to Finch, her "NEW Regional HR Director." (Doc. 23-6).

- An email from Mangerie to Finch stating: "I just put her [plaintiff] on leave and need to bring you up to speed." (Doc. 23-1).

- An email from one of defendant's employees to Mangerie on the day plaintiff was suspended that was forwarded to him from Finch, with Finch's portion of the message missing. (Doc. 23-3).

- Finch's letter of resignation. (Doc. 23-7)

Plaintiff has requested that the discovery deadline be reopened and that she be allowed

to redepose all previous deponents as to any and all materials submitted after the date of their respective depositions.  Upon review, the Court is deeply concerned that these documents were not produced until after all the witness depositions had been completed.  The Court will reopen discovery until September 30, 2014.  Plaintiff may redepose deponents on the materials turned over after their depositions.[6]

**Conclusion**

For the reasons set forth above, Angelique Kaczmarek's Motion to Compel & Motion to Extend Discovery Deadline (Doc. 21) is GRANTED IN PART and DENIED IN PART.  The Court directs plaintiff to file more narrow requests consistent with this Opinion within fourteen (14) days of this Order.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/10/14

---

[6] The Court declines to award fees and costs.